UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

AMERICAN HEALTH, INC.; SOCIOS
MAYORES EN SALUD, INC.; SOCIOS
MAYORES EN SALUD HOLDING, INC.

      Plaintiff

           v.

DR. SERGIO CHÉVERE; IRAIDA DEL
RÍO; THE CONJUGAL PARTNERSHIP
COMPOSED BY SERGIO CHÉVERE AND
IRAIDA DEL RÍO

      Defendants.

CIVIL NO. 12-1678 (PG)

## ORDER GRANTING PRELIMINARY INJUNCTION

THIS MATTER comes before the Court on AMERICAN HEALTH, INC., SOCIOS MAYORES EN SALUD, INC., AND SOCIOS MAYORES EN SALUD HOLDING, INC.'s (collectively referred to as "American Health" or "Plaintiffs") Amended Verified Complaint (Docket No. 4) and unopposed Memorandum of Law in Support of Request for Preliminary and Permanent Injunction(Docket No. 5). The Court **GRANTS** the preliminary relief sought and enters a preliminary injunction for the reasons that follow.

### I.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following facts from the Amended Verified Complaint, which Defendants have not answered, and the

Memorandum of Law in Support of Request for Preliminary and Permanent Injunction, which Defendants did not oppose.

On February 7, 2011, Defendant Chévere was hired as American Health's Senior Vice President, for which the parties signed an Employment Agreement.[1] As Senior Vice President, Chévere had multiple duties, all of which gave him access to "Confidential Information" (a defined term of the Employment Agreement) that belongs to American Health.[2] Under Paragraph 6 of the Employment Agreement, Chévere agreed to keep confidential and not disclose or use the Confidential Information, unless such disclosure and use was necessary and incidental to his

---

[1]     Chévere entered into the Employment and Consultant Agreements at issue with Socios Mayores en Salud Holdings, Inc. and Socios Mayores en Salud, Inc., respectively. His services under both agreements, however, were provided to American Health, Inc. Moreover, the relevant confidentiality, delivery, survival and related clauses of the agreements invoked by American Health include the signatories of the agreements and all their affiliates and subsidiaries as beneficiaries, which include all Plaintiffs.

[2]     That Agreement defines Confidential Information as: "(i) business development, growth and other strategic business plans; (ii) properties available for acquisition, financing development or sale; (iii) accounting and business methods; (iv) services or products and the marketing of such services and products; (v) fees, costs and pricing structures; (vi) designs; (vii) analysis; (viii) drawings, photographs and reports; (ix) computer software, including operating systems, applications and program listings; (x) flow charts, manuals and documentation; (xi) data bases; (xii) inventions, devices, new developments, methods and processes, whether patentable or unpatentable and whether or not reduced to practice; (xiii) copyrightable works; (xiv) all technology and trade secrets (xv) confidential terms of material agreements and customer relationships; and (xvi) all similar and related information in whatever form."

2

performance as Senior Vice President. Paragraph 8 of the Employment Agreement requires Chévere to return and deliver to American Health all the Confidential Information he accessed whenever American Health requests it, regardless of the form and medium in which it was contained, and included an obligation to provide written confirmation that Chévere had not kept copies of the Confidential Information.

American Health provided Chévere a laptop and desktop computers (property of American Health) with a business email account schevere@ahmpr.com, as well as other equipment, plus access to high-speed Internet necessary for the rendition of Chévere's services and obligations. In addition, Chévere was granted remote real time access to American Health's computer servers, where the Confidential Information is stored, through VPN (Virtual Private Network) and OWA (Outlook Web Access).

Between June and August 2011, Chévere worked as Acting President of American Health. On or around October 1, 2011, Chévere ceased being Senior Vice President, and entered into a Consultant Agreement. As Consultant, Chévere had the following duties: (i) serve as Chairperson to the Medical Management Committee and Quality Program Committee, and advise in areas such as cost management, Star Rating, Risks Scores and Medical Loss Ratios; (ii) advise and assist in sales efforts; (iii) advise the CEO of American Health, Inc. and Triple-S Salud,

3

Inc.; (iii) manage a medical group known as Alianza Virtual; and (iv) serve as part of American Health, Inc.'s Board of Directors.

Under the Consultant Agreement, Chévere agreed to keep confidential and not disclose or use the "Confidential Information" to which Chévere had access, unless such disclosure and use was necessary and incidental to Chévere's performance as Consultant.³ Chévere agreed in the Consultant Agreement that the Confidential Information is the property of American Health, and that he was to retain no copies. Further, like the Employment Agreement, the Consultant Agreement obligates Chévere to return and deliver to American Health all Confidential Information in Chévere's possession at the request of American Health at any time.

Unbeknownst to American Health, between May 12 and May 14, 2012, Chévere downloaded, retrieved and sent to his personal email address, sergiocheverepmg@yahoo.com, American Health's Confidential Information without its knowledge and express authorization. American Health's records show that Chévere made

---

³   The Consultant Agreement defines Confidential Information in a broad fashion, to include information not available to the public, including but not limited to: (i) customer lists; (ii) supplier lists; (iii) employee lists; (iv) marketing data or plans; (v) business plans; (vi) specifications; (vii) schematics; (viii) methods processes; (ix) confidential notes; (x) trade secrets; (xi) procedures; (xii) research data; (xiii) computer codes and passwords; and (xiv) any financial data of any kind.

4

54 wire transmissions to his personal email from American Health's information computer system, containing American Health's proprietary information and trade secrets, i.e. the Confidential Information. In the process of such unauthorized downloading, retrieval, and transmission, Chévere exceeded the limited authorization he had to access certain Confidential Information within American Health premises and offices.

At no time during his employment (as Senior Vice President, Acting President and Consultant) was Chévere authorized to copy, transfer, download, store or remove from the premises, any of American Health's Confidential Information. Nor was he ever authorized to access American Health's computers and obtain information from any such computers for purposes other than his duties.

Effective June 22, 2012, 37 days after his illegal downloading, retrieval and transmission of American Health's Confidential Information, Chévere notified his decision to terminate the Consultant Agreement. Although Chévere was required under the Consultant Agreement to give a 60-day advance notice, he only gave a 2-day notice.

On August 10, 2012, American Health, through counsel, demanded, among other things, that Chévere "deliver to [American Health]" the Confidential Information he had retrieved in accordance with his obligations under the Consultant Agreement,

5

¶7(b) and the Employment Agreement, §8. Chévere, in breach of the confidentiality and delivery clauses of the Consultant Agreement and Employment Agreement, which continued in full force and effect even though the contracts had terminated, did not comply with American Health's demand. This litigation ensued.

American Health seeks injunctive relief under the Employment and Consultant Agreements, the Puerto Rico Commercial and Industrial Secrets Protection Act, the Stored Wire and Electronic Communications and Transactional Records Access Act, and the Wire and Electronic Communication and Interception of Oral Communications Act, to preliminary enjoin Defendants from directly or indirectly possessing and using or disclosing American Health's Confidential Information (as defined in the Employment and Consultant Agreements and shown above). American Health seeks that the court issues a preliminary injunction ordering Defendants to return all of American Health's Confidential Information. Also, American Health seeks a preliminary injunction prohibiting Defendants from using and disclosing its Confidential Information.

## II.

### DISCUSSION

A plaintiff seeking a preliminary injunction must satisfy a four-prong test, i.e.: "(1) the likelihood of the movant's

6

success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006) (citations omitted).

Plaintiffs satisfy all factors for a preliminary and permanent injunction.

## A. **The Likelihood of Success**

Defendants have failed to dispute that, between May 12 and May 14, 2012, Chévere downloaded, retrieved and sent to his personal email address, sergiocheverepmg@yahoo.com, American Health's Confidential Information without its knowledge and express authorization. Specifically, Chévere made 54 wire transmissions to his personal email from American Health's information computer system, containing American Health's proprietary information and trade secrets, i.e. the Confidential Information, as specified in Exhibit C of the Complaint (Docket No. 1-6).

Paragraph 7(b) of the Consultant Agreement states:

Consultant acknowledges that all of the aforementioned confidential information is the exclusive property of the Company. All business

7

records, papers and documents kept or made by
Consultant under this agreement with the Company
relating to the business of the Company shall be
and remain the property of the Company at all
times. Upon the request of the Company at any
time, Consultant shall promptly deliver to the
Company, and shall retain no copies of, any
written materials, records and documents made by
Consultant that came into his possession while
rendering the service to the Company concerning
the business or affairs of the Company other than
personal materials, records and documents
(including notes and correspondence) of Consultant
not containing proprietary information relating to
such business affairs.

Paragraph 8 of the Employment Agreement has similar language,

and obligates Chévere to return and deliver to American Health

all Confidential Information as requested by American Health

"from time to time."

Defendants have failed to dispute that Chévere has refused

to deliver the Confidential Information to American Health, as

required by the Consultant Agreement, ¶7(b) and the Employment

Agreement, §8, and as requested by American Health in its

counsel's August 10, 2012 letter, thereby breaching his

contractual obligations. Thus, it is likely that American Health

will prevail on its breach of contract claim against Chévere.

Similarly, it is likely that American Health will prevail

on its causes of action under the state and federal statutes on

which it relies.

First, American Health invokes the Puerto Rico Commercial

and Industrial Secrets Protection Act, Law No. 80 of June 3,

2011. That statute protects "Commercial Secrets" from improper appropriation. Id. at Art. 6. It defines "Commercial Secrets" as information from which independent economic potential or actual value is derived that is not of common knowledge or accessible to persons who can obtain pecuniary interest from its use or dissemination, and that has been protected by reasonable security measures to maintain its confidentiality. Id. at Art. 3.

The Confidential Information that Chévere misappropriated and has refused to return constitutes "Commercial Secrets" under the statute, as agreed by the parties in the Employment and Consultant Agreements, ¶¶6 and 7, respectively, and as can be plainly seen by a cursory view of the list of documents Chévere misappropriated and has refused to return, which include "Cost Trends," "Forecasts," "Risk Factor Analysis," and "Budgets." Docket 1-6 (page 2 of 3). Furthermore, the statute offers examples of what constitutes "reasonable security measures," some of which were taken by American Health with Chévere, such as the confidentiality provisions that the parties agreed to uphold through the Employment and Consultant Agreements. Law No. 80 of June 3, 2011, Art. 4.

The statute provides a cause of action against any person who misappropriates a "Commercial Secret." Id. at Art. 6. Misappropriation includes the acquisition of a "Commercial

Secret" by a person who knew or should have known that it obtained the "Commercial Secret" by inappropriate means. Id.

Here, Chévere knowingly acquired the Confidential Information by inappropriate means, inasmuch as he made 54 wire transmissions to his personal email from American Health's information computer system, even though he had remote access to such information (thus mooting any need to retrieve and send it to his personal email), and he retrieved much more information than he needed (or could use) to perform his duties at any particular time. Moreover, Chévere knew that he was not authorized to retrieve all that information from American Health's database as that exceeded his duties under the Consultant Agreement, and still refuses to return it to American Health even after he is no longer employed by or in privity with American Health. Hence, American Health will likely prevail on its cause of action under the Puerto Rico statute.

Second, American Health invokes the Stored Wire and Electronic Communications and Transactional Records Access Act. 18 U.S.C.A. § 2701, et seq. That statute renders liable anyone who "intentionally exceeds an authorization to access" a "facility through which an electronic communication service is provided… and thereby obtains… access to a wire or electronic communication while it is in electronic storage[.]" Id. at 2701(a). Appropriate relief under that statute includes, but is

10

not limited to, preliminary equitable relief in a civil action. Id. at 2707(a) and (b).

"[E]lectronic communication" is defined as "any transfer of… writing… by a wire… system that affects interstate or foreign commerce[.]" Id. at § 2510(12). The Confidential Information that Chévere acquired was attached or formed part of emails which are "electronic communications," United States v. Szymuszkiewicz, 622 F.3d 701, 705 (7th Cir. 2010), or constitutes "electronic communications" per se as they are writings transferred to American Health's database system or to other persons that are employees or otherwise related to American Health by the person or persons that created them. United States v. Steiger, 318 F.3d 1039, 1047 (11th Cir. 2003). American Health's server is a facility through which an electronic communication service is provided to American Health's employees and other personnel. Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz, 793 F. Supp.2d 311, 334-336 (D.D.C. 2011).

Chévere intentionally exceeded any authorization he had to access American Health's database and obtain the Confidential Information. He accessed American Health's server and made 54 e-mail and document transfers in an uninterrupted span of hours almost a month before he unilaterally terminated the Consultant Agreement, and subsequently refused to return the documentation

11

to American Health. The documentation he took exceeded the authority he had to access it, as it constituted more information that he could ever use to fulfill his duties as Consultant at any given time. The authority he had to access that information was limited to what he needed to fulfill his duties under the Consultant Agreement and then return the documentation when requested by American Health, which he has refused to do. Thus, American Health will likely prevail on its claim under the Stored Wire and Electronic Communications and Transactional Records Access Act.

Third, American Health invokes the Wire and Electronic Communication and Interception of Oral Communications Act. 18 U.S.C.A. § 2510, *et seq.* That statute states in pertinent part: "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C.A. § 2520(a). "Such relief" includes preliminary equitable relief. Id. at § 2520(b). The statue defines "intercept" as the "acquisition of the contents of any… electronic communication… through the use of any electronic, mechanical or other device." Id. at § 2510(4). And, it defines "electronic communication" as

12

"any transfer of… writing… by a wire… system that affects interstate or foreign commerce[.]" Id. at § 2510(12).

Chévere "intercepted" some or all of American Health's Confidential Information using a computer to acquire it "during flight." Steiger, 318 F.3d at 1048-49 (internal quotation marks omitted). Section 2511(2)(d) makes it unlawful for a person who has consent to intercept an electronic communication to do so for the purpose of committing a tortious act in violation of the laws of any State. It is under that section that American Health moves.

Chévere spent a considerable amount of uninterrupted time acquiring "during flight" (and thereby "intercepting") a vast amount of "electronic communications" that contained or included government bids, budgets, costs analysis, forecasts, and other confidential business documents (Docket 1-6) of American Health almost a month before he unilaterally terminated his Consultant Agreement, and now refuses to return them. This fact alone supports a conclusion that Chévere intercepted the Confidential Information with a tortious intent, both under the Puerto Rico "Commercial Secrets" statute cited above, as well as under Article 1802 of the Puerto Rico Civil Code, given that he has refused to return the information even though it belongs to American Health and he has no valid or justifiable need for it now. Chévere intends to benefit economically from the

13

Confidential Information. Thus, American Health will likely
prevail under the Wire and Electronic Communication and
Interception of Oral Communications Act as well.

## B. Irreparable Harm

The First Circuit has stated that it "do[es] not find
irreparable injury where only money is at stake and where the
plaintiff has a satisfactory remedy at law to recover the money
at issue." Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36
(1st Cir. 1986). Stated differently, this court has indicated
that "[a]n injury will only be considered irreparable if no
adequate remedy for the injury exists at law." Total Petroleum
Puerto Rico Corp. v. Colón-Colón, 577 F. Supp.2d 537, 551
(D.P.R. 2008), citing, Foxboro Co., 805 F.2d at 36, and 11A
Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal
Practice and Procedure § 2948.1, at 149-51 (2d ed. 1995).

Here, as the parties agreed, that is the case. Dr. Chévere
agreed in Paragraph 11 of the Employment Agreement that money
damages are not an adequate remedy at law for any breach of the
surviving provisions of the Employment Agreement, including the
confidentiality provisions. Further, Chévere agreed in Paragraph
7(a) of the Consultant Agreement that the use or disclosure of
the confidential information to which he had access would cause
American Health substantial loss and damages which could not be
readily calculated, and for which there was no adequate remedy

14

at law. Courts have found such contractual language persuasive. See N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2d Cir. 1999), citing, Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999).

Such contractual language is reasonable under the circumstances present here. Defendants have failed to dispute that Dr. Chévere misappropriated and has refused to return financial, strategic, and development information of American Health which, if known or used by any competitor, could harm American Health and its goodwill beyond calculable and sustained economic repair. Other courts have found irreparable harm in similar situations. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18-20 (1st Cir. 1996); cf. Optos, Inc. v. Topcon Med. Sys., Inc., 777 F. Supp. 2d 217, 241 (D. Mass. 2011) ("When a plaintiff demonstrates likelihood of success on a misappropriation of trade secrets claim, it need not prove irreparable injury because such harm is presumed") (citations omitted).

Moreover, the Puerto Rico Commercial and Industrial Secrets Protection Act states in its Article 8, that in every case where the existence of a "Commercial Secret" misappropriation is evidenced, a court may issue a preliminary injunction without a showing of irreparable harm. Law No. 80 of June 3, 2011. For this and the additional reasons stated above, the irreparable

15

harm prong is satisfied.

### C. The Balance of Relevant Equities

As agreed by the parties, the confidential information is the exclusive property of American Health, and Dr. Chévere's retrieval of such information exceeded his authority under the Consultant Agreement. Consultant Agreement, ¶7(a) and (b); Employment Agreement, ¶6(a). Moreover, the parties agreed that Chévere would have to return the Confidential Information to American Health at any time that American Health requested it. Consultant Agreement, ¶7(b); Employment Agreement, §8. Accordingly, Dr. Chévere has no proprietary right or interest in the Confidential Information, while American Health, as owner of the information and the party who would be irreparably harmed if such information was given to a non-party or otherwise used by Defendants, does have a proprietary right and interest in the information. The balance of equities, hence, tilts in American Health's favor.

### D. The Impact on the Public Interest

Puerto Rico has a strong public interest in preserving the rights of its citizens against the misappropriation and misuse of their property. Clear evidence of this are the several criminal statutes that deal with the matter, as well as the Puerto Rico Commercial and Industrial Secrets Protection Act cited above. Moreover, Puerto Rico has a strong public policy in

favor of preserving the contractual rights of its citizens, and the parties here agreed that Dr. Chévere would return the Confidential Information to American Health at any time the latter requested. Consultant Agreement, ¶7(b); Employment Agreement, §8. The public interest, thus, would be served if Dr. Chévere returned to American Health, and was precluded from possessing and using the Confidential Information that belongs to American Health.

### III.

### RELIEF GRANTED

**A. Return of American Health's Confidential Information.**

**IT IS HEREBY ORDERED** that Defendants, and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assignees, or attorneys of the Defendants, shall return all of American Health's Confidential Information as defined in this Order **WITHOUT ANY ALTERATION OR MODIFICATION THERETO**, including but not limited to (See, Docket No. 4, Plaintiffs' Exhibit C):

(1) "Suspects from MMC2020"

(2) "Budget 2012"

(3) "AHM Opportunity Analysis"

(4) "Network Strategic Plan 2012.ppt"

(5) "BID 2012"

(6) "Cost Trends"

(7) "First Draft 2012 budget medical cost & revenues
     meeting"

(8) "Acuerdo documentado"

(9) "MEDICAL_COSTS_REPORT_201102_rpt.xlsx"

(10) "Suspect List"

(11) "ADS_Performance_Summary_201004_12M_201010_calc.xlsx"

(12) "Quarterly Forecast 7-28-11.xlsx"

(13) "Forecast Document"

(14) "June Closing Highlights"

(15) "Forecast"

(16) "Updated Quarterly Forecast"

(17) "Visita Inforcrossing"

(18) "Analisis de Genericos"

(19) "Risk Factors analysis" (15KB)

(20) "Risk Factors analysis" (12KB)

(21) "Risk Factors analysis" (4MB)

(22) "Medical Cost Trend Reports"

(23) "Presentación Infocrossing"

(24) "CVS Caremark Proposal"

(25) "Reportes de Cada Departamento"

(26) "SM-Network Update.ppt"

(27) "RFP-Orthotics and Prosthetics Meeting"

(28) "Informes Ejecutivos" (664KB)

(29) "Informes Ejecutivos" (759KB)

18

(30) "Informes Ejecutivos" (75KB)

(31) "SM-Network Update.ppt"

(32) "Pharmacy Utilization Report 2010 2011 BY Paid Mth"

(33) "ADS_Performance_Summary_201004_12M_201010_calc.xlsx"

(34) "Acciones concedidas como compensación para el 2011"

(35) "Benefit table BID 2012"

(36) "AHM DRAFT bid summary – updated" (649KB)

(37) "Emailing: Estimated Part D Risk Scores.pdf, Estimated Part C Risk…" (127KB)

(38) "AHM DRAFT bid summary – updated" (102KB)

(39) "AHM DRAFT bid summary – updated" (649KB)

(40) "Emailing: Estimated Part D Risk Scores.pdf, Estimated Part C Risk…" (127KB)

(41) "AHM draft bid summary – updated" (102KB)

(42) "MA Bid Summary as of 5/30"

(43) "DRAFT Results and 2012 Medical Cost Reduction" (130KB)

(44) "DRAFT Results and 2012 Medical Cost Reduction" (130KB)

(45) "Part C Cost Share Change Impacts"

(46) "2012 Medical Cost Reduction"

(47) "Stock Distribution"

(48) "Medical Cost Trend Analysis 2008–2010 as of March 31, 2011"

(49) "Hospitalist Agreement - Manati Physician Group (2)"

(50) "Hospitalist Agreement - Manati Physician Group"

(51) "AHM risk Scores"

(52) "pmpm mental health"

(53) "2012 Bid Admin Cost data for our 9 AM meeting tomorrow"

(54) "Directore [sic] Médicos con Poor Performance (MIR Fondos)"

(55) "Directore [sic] Médicos con Poor Performance (MIR Fondos)"

(56) "Medicos conDeficit [sic] Virtual con más de 10 vidas"

(57) "Reunion Directores Medicos"

(58) "CONSULTANT AGREEMENT 09-29-11.doc"

## B. Prohibition from Using and Disseminating American Health's Confidential Information.

**IT IS FURTHER ORDERED** that Defendants, and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assignees, or attorneys of the Defendants, shall be **ENJOINED** from using and disclosing any of American Health's Confidential Information as defined in this Order, including but not limited to the documents listed above.

**C. PLAINTFFS' DUTY TO POST A BOND OR OTHER SECURITY.**

Pursuant to Federal Rule of Civil Procedure 65(c), the Plaintiffs are hereby ordered to post a bond in the amount of $10,000.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 19, 2013.

S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
U.S. DISTRICT JUDGE